UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 19)

**I.     Introduction**

On March 18, 2020, New Style Corp. ("New Style" or "Plaintiff") brought this action against Chad Wolf ("Wolf'), Acting Secretary of the Department of Homeland Security ("DHS"); Kenneth T. Cuccinelli, II ("Cuccinelli"), Acting Director of the United States Citizenship and Immigration Services ("USCIS"); and Barbara Q. Velarde ("Velarde"), Chief of the Administrative Appeals Office ("AAO") of USCIS (collectively, "Defendants"). Dkt. 1. On August 24, 2020, Plaintiff filed the First Amended Complaint ("FAC"), which is the operative one. Dkt. 14. The FAC seeks to reverse USCIS's denial of a Form I-140 Immigration Petition, filed on behalf of Xiaoming Zhao ("Zhao"), pursuant to the Administrative Procedure Act ("APA"). *Id.*

On January 11, 2021, Plaintiff filed a motion for summary judgment (the "Motion"). Dkt. 19. On February 8, 2021, Defendants filed an opposition to the Motion (the "Opposition"). Dkt. 20. On March 8, 2021, Plaintiff filed a reply in support of the Motion (the "Reply"). Dkt. 21. On April 5, 2021, Defendants filed a sur-reply (the "Sur-Reply"). Dkt. 22.[1] On June 11, 2021, Plaintiffs filed a notice of supplemental authority. Dkt. 25.

A hearing on the Motion was held on August 23, 2021. Dkt. 29. On the same date, an order issued directing the parties to file supplemental briefing on or before September 22, 2021. *Id.* On September 22, 2021, Defendants filed their supplemental brief ("Defendants' Supplemental Brief"). Dkt. 32. On the same date, Plaintiff filed its supplemental brief ("Plaintiff's Supplemental Brief"). Dkt. 33. Based on a review of those submissions, it has been determined that no further hearing is necessary as to the Motion. Accordingly, it has been taken under submission, and addressed by this Order.

For the reasons stated in this Order, the Motion is **DENIED.**

**II.    Background**

   A.    Parties

---

[1] The Sur-Reply was filed properly in accordance with a scheduling order issued on October 20, 2020. Dkt. 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

New Style is a general merchandise wholesaler that is incorporated in California. Certified Administrative Record ("CAR") at 668. New Style is a wholly owned subsidiary of Shenyang Meihe Wood Co., Ltd. ("SYMW"), a Chinese manufacturer and supplier of specialty industrial and residential products. *Id.* at 643-44; Supplemental Certified Administrative Record ("SCAR") at 903.[2]

Zhao is a native and citizen of China. CAR at 637. She was employed by SYMW as its General Manager from April 2011 to February 2016. SCAR at 903. In March 2016, she was transferred to work in the United States as the President of New Style. *Id.* Zhao is the largest shareholder of the company and owns 75% of the stock in SYMW. *Id.*

B.  New Style's L-1A Petition

On or before January 21, 2016, New Style filed an L-1A petition (the "L-1A Petition") on behalf of Zhao. *Id.* The petition explained that Zhao had been employed by SYMW in China for several years and stated that Plaintiff wished to transfer Zhao to a senior managerial role with New Style in the United States. *Id.* at 909.

1.  USCIS's Approval and Extensions

On January 21, 2016, USCIS approved the L-1A Petition. *Id.* at 892. The classification period was from February 1, 2016, to January 31, 2017. *Id.* at 892, 933. On January 26, 2017, USCIS approved New Style's request to extend Zhao's L-1A status. *Id.* at 892, 932. After approval, Zhao's classification period continued from February 1, 2017, to January 31, 2019. *Id.* On December 21, 2018, New Style filed a Form I-129 Petition seeking a further extension of Zhao's L-1A classification. *Id.* at 885. On March 5, 2019, USCIS approved the I-129 petition, which extended Zhao's L-1A status from February 1, 2019 to January 31, 2021. *Id.* at 885.

2.  USCIS's Notice of Intent to Revoke

On April 10, 2020, USCIS allegedly sent New Style a "Notice of Intent to Revoke" (the "NOIR") Zhao's L-1A nonimmigrant visa. Dkt. 19-1 at 26; Dkt. 19-4, Declaration of Jonathan Weiss ("Weiss Decl.") ¶ 4. It stated that one of the issues USCIS was reconsidering was "whether [Plaintiff] ha[s] established that the beneficiary will be employed in a managerial or executive capacity." Dkt. 19-5 at 4. In response to the NOIR, Plaintiff allegedly submitted evidence including "2017 evaluations of [New Style's] managerial staff (Dennis Li, Michael Leija, Abel Zhao, and Jun Zhang) performed by Zhao, Michael Leija's 2018 employment contract signed by Zhao, 2016 and 2017 corporate policies approved by Zhao relating to employee conduct, expense management, and employee incentives, and 2017-2018 management meeting minutes." Dkt. 19-1 at 26.

3.  USCIS's Reaffirmation

On August 6, 2020, USCIS allegedly sent Plaintiff a "Notice of Reaffirmation" of Zhao's L-1A

---

[2] CAR refers to the certified administrative record concerning USCIS's review of New Style's I-140 petition. Dkt. 28. SCAR refers to the supplemental certified administrative record concerning USCIS's review of New Style's L-1A petition. Dkt. 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

nonimmigrant visa. Dkt. 19-1 at 26; Dkt. 19-7. The Notice of Reaffirmation stated: "[Plaintiff] ha[s] submitted sufficient documentation in rebuttal to the [NOIR]. Accordingly, the approval of the petition has been reaffirmed." Dkt. 19-7 at 2.

### C. New Style's First I-140 Petition

On March 23, 2018, New Style filed a Form I-140 petition (the "I-140 Petition") on behalf of Zhao pursuant to 8 U.S.C. § 1153(b)(1)(C). CAR at 3, 24, 636-660. The I-140 classification "allows a U.S. employer to permanently transfer a qualified foreign employee to the United States to work in an executive or managerial capacity." *Id.* at 3; *see* 8 U.S.C. § 1153(b)(1)(C). In support of the I-140 Petition, New Style submitted documents pertaining to New Style's incorporation in the United States, ownership, investments, physical facilities, financial information, commercial activities, organization and employees, as well as documentation about the foreign qualifying company, SYMW, and Zhao. CAR at 662-1352.

#### 1. USCIS's Notice of Intent to Deny

On January 14, 2019, USCIS issued a Notice of Intent to Deny (the "NOID") the I-140 Petition. *Id.* at 138-45. The NOID cited several evidentiary deficiencies, including insufficient evidence that Zhao would be a manager or an executive within the meaning of the statute, a "fail[ure] to submit evidence that established that [Plaintiff] [wa]s complex enough to exclusively designate [Zhao] [as] an executive or manager," and a failure to establish that Plaintiff would be able to pay Zhao's salary. *Id.* at 140.

On February 13, 2019, Plaintiff submitted the following documents in response to the NOID:

i. An amended Form I-140 page 1 with previously missing information;
ii. A statement explaining Zhao's managerial duties abroad at SYMW;
iii. Documentation stating that New Style had done business at two addresses in California;
iv. Copies of Zhao's six most recent paycheck receipts;
v. A statement from a New Style official detailing the specific daily tasks involved in Zhao's proposed duties, and the percentage of her time that would be spent on each of them;
vi. An organizational chart demonstrating New Style's structure and staffing;
vii. A list of New Style's employees, their job duties, levels of education, salaries and part-time or full-time status;
viii. Copies of resumes and diplomas for Zhao's immediate subordinates;
ix. Performance appraisals issued by Zhao for her immediate subordinates;
x. Annual work reports prepared by Zhao's subordinates, and Zhao's feedback and responses;
xi. Job offer and employment contracts prepared or signed by Zhao;
xii. Employment communication records;
xiii. Company management policies and other regulations drafted and/or approved by Zhao;
xiv. Evaluations prepared by Zhao's subordinate managers of their own subordinate employees;
xv. New Style meeting records;
xvi. New Style's Form W-3 and W-2;
xvii. Evidence of employment of a Certified Public Accounting firm;
xviii. Documentation of employee compensation and payroll; and
xix. I-9 and W-4 forms for all New Style employees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
| Title | New Style Corp v. Chad Wolf, et al. | | |

*Id.* at 146-155.

      2.     <u>USCIS's Denial</u>

On March 20, 2019, USCIS denied the I-140 Petition (the "Denial"). *Id.* at 24-29. The Denial stated that it was based on the following grounds:

> The petitioning entity's staffing levels appear to be woefully inadequate since the company lacks a significant amount of employees who would preclude any supervisor/manager or the beneficiary her or himself from having to predominately perform administrative/ operational duties in the event that they had to dedicate at least 35 hours per week of their time exclusively to the petitioning entity. . . .
>
> . . .
>
> An executive directs Management; however, the record does not show that the Petitioning entity has the bonafides to meet the regulations to be compliant with the definition of Management because "Management" entails the supervision of professionals, and the Petitioning entity's staffing levels lack sufficient professionals. Consequently, despite the self-defined titles of various people's positions, the beneficiary is in effect a supervisor of non-managers and/or non-professionals.

*Id.* at 28-29.

      3.     <u>Plaintiff's Administrative Appeal</u>

On April 18, 2019, Plaintiff appealed the Denial to the AAO. *Id.* at 17-22. On October 29, 2019, the AAO issued an order dismissing Plaintiff's appeal. *Id.* at 3-12. It stated that the basis for dismissal was New Style's failure to submit sufficient and credible evidence that Zhao's role would be primarily managerial:

> [New Style] submitted duty descriptions for the Beneficiary [Zhao] including few credible details and it otherwise provided insufficient supporting documentation to substantiate the qualifying managerial duties she would perform on a daily basis. The Beneficiary's duty descriptions are generic, and could apply to any manager acting in any business or industry and they do not provide insight into the actual nature of her role. The Petitioner provided insufficient examples and little supporting documentation to demonstrate the Beneficiary's performance of qualifying duties, such as marketing and financial policies and strategies she formulated, projects, directives and instructions related to 'high-quality services' she implemented, controls she put in place to assure compliance with brand standards, or objectives and plan[s] she revised.
>
> . . .
>
> [T]he Petitioner asserts that the Beneficiary oversees a subordinate operations manager and three other subordinate managers, but the record includes little evidence of her delegating duties to these claimed supervisors. This lack of detail and documentation specific to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
| Title | New Style Corp v. Chad Wolf, et al. | | |

Beneficiary's daily activities is particularly noteworthy since the Petitioner states that she acted as president for approximately two years prior to the date the petition was filed in March 2018. Specifics are clearly an important indication of whether a beneficiary's duties are primarily managerial in nature, otherwise meeting the definitions would be simply a matter of reiterating the regulations.

The Beneficiary's duties also include discrepancies that leave question [sic] as to their credibility. For instance, the Petitioner regularly refers to the Beneficiary's coordination with a board of directors both in her duties and elsewhere on the record, noting her "full implementation of the[ir] policies and strategic plans." However there is no evidence on [sic] the record to demonstrate that Petitioner has a functioning board of directors since the company is wholly owned by the foreign parent, which is 75% owned by the Beneficiary. In addition, beneficiary's latter duty description also twice refers to her providing training to subordinate managers on "furniture and home décor," however there is no indication on the record that the company sells these products, only documentation reflecting the sale of pillows, Bluetooth speakers, bicycles, and other miscellaneous items. These discrepancies are particularly notable in light of the near complete lack of detail and references to its specific business and industry in the Beneficiary's duty descriptions. The Petitioner must resolve th[ese] discrepancies in the record with independent, objective evidence pointing to where the truth lies.

. . .

In conclusion, the Petitioner has not established that the Beneficiary would act as a personnel manager. The Beneficiary's duty description is generic and lacks [credibility] and probative value; and the record lacks credible supporting documentation of her claimed qualifying duties. The provided evidence is also not sufficient to demonstrate that the Beneficiary would oversee subordinate managers, as the duty descriptions for these claimed subordinates were also overly vague and did not sufficiently substantiate their asserted roles.

*Id.* at 6-7, 11 (internal citations omitted).

      D.     New Style's Second I-140 Petition

On September 13, 2019, New Style filed a second I-140 petition seeking an immigrant visa for Zhao as a multinational executive. Dkt. 32 at 3. In a letter accompanying that petition, New Style expressly stated that the new petition did not seek a multinational-manager classification for Zhao -- only a multinational-executive classification. *Id.* at 7. On February 6, 2020, USCIS approved the petition. *Id.*[3]

**III.   Analysis**

      A.     Legal Standards

           1.     <u>Administrative Procedure Act</u>

---

[3] Both parties agree that, because New Style's second I-140 petition for Zhao concerned only her executive, and not her managerial capacity, USCIS's review and approval of that petition is not germane to this action nor causes it to be nonjusticiable. Dkt. 32 at 7; Dkt. 33 at 15-16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

Under the Administrative Procedure Act ("APA"), an agency's decision must be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" (5 U.S.C. § 706(2)(A)) or "if its factual findings are unsupported by substantial evidence" (*Love Korean Church v. Chertoff*, 549 F.3d 749, 754 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also Butte Environmental Council v. U.S. Army Corps of Eng'rs*, 620 F.3d 936, 945 (9th Cir. 2010)).

Review under the arbitrary and capricious standard is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010) (internal quotation marks and citation omitted). "A reasonable basis exists where the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choices made.' " *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (quoting *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agriculture*, 415 F.3d 1078, 1093 (9th Cir. 2005)). An agency's decision will be set aside only under the following circumstances:

> [I]t "has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Butte*, 620 F.3d at 945 (quoting *Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007)).

Review under the substantial evidence standard is also deferential. This standard "is a 'term of art' in administrative law that describes how 'an administrative record is to be judged by a reviewing court.' " *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 301 (2015) (quoting *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963)). Substantial evidence is "less than a preponderance," but still requires evidence that "a reasonable mind might accept as adequate to support a conclusion." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Therefore, a court must uphold the agency's finding "unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Monjaraz-Munoz v. I.N.S.*, 327 F.3d 892, 895-96 (9th Cir. 2003) (internal quotation marks and citation omitted).

Judicial review of an agency action is limited to the contents of the administrative record, "except when there has been a 'strong showing of bad faith or improper behavior' or when the record is so bare that it prevents effective judicial review." *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence.").

Courts regularly resolve APA challenges through motions for summary judgment. *See Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471-72 (9th Cir. 1994); see also *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985) ("[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did."). In cases seeking review of a final agency determination under the APA, "[t]he task of the reviewing court is to apply the appropriate APA standard of review to the agency

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (internal citation omitted).

In reviewing an administrative decision under the APA, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co.*, 753 F.2d at 769. Instead, the function of the district court on summary judgment is "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*.

   2.   Immigration and Nationality Act

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, establishes a "comprehensive federal statutory scheme for regulation of immigration and naturalization." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 587 (2011) (internal quotation marks and citation omitted). "The INA imposes a numerical quota on the number of immigrant visas that may be issued and/or the number of aliens who may otherwise be admitted into the United States for permanent residence." *Hootkins v. Napolitano*, 645 F. Supp. 2d 856, 861 (C.D. Cal. 2009).

The INA authorizes qualifying multinational organizations to transfer managerial or executive employees to the United States on either a temporary or permanent basis. "To achieve temporary, nonimmigrant status, an employment-based applicant may apply for an L-1A visa." *Decor Team LLC v. McAleenan*, 520 F. Supp. 3d 1212, 1215 (D. Ariz. 2021). This type of visa is available to "an alien who within the preceding three years has been employed abroad for one continuous year by a qualifying organization" and who will be employed by that employer in the United States "in a capacity that is managerial, executive, or involves specialized knowledge." 8 C.F.R. § 214.2(l); *see also* 8 U.S.C. § 1101(a)(15)(L). An L-1A visa may be extended in two-year increments, but the total visa period may not exceed seven years. 8 C.F.R. § 214.2.(l)(15)(ii).

To achieve permanent resident status, an employment-based applicant must complete the following steps:

> First, the individual's employer (the "petitioner") files a labor certification application with the U.S. Department of Labor. Second, the employer files an I-140 petition with United States Citizenship and Immigration Services ("USCIS") on behalf of the immigrant worker (the "beneficiary"). Third, if the I-140 petition is approved, the beneficiary files an I-485 application with USCIS to adjust his or her status to a lawful permanent resident.

*Decor Team LLC*, 520 F. Supp. 3d at 1215 (internal citations omitted). Similar to the L-1A visa, a I-140 petition requires a statement demonstrating that "in the three years preceding entry as a nonimmigrant, the alien was employed . . . abroad for at least one year in a managerial or executive capacity" by the same company that is filing the petition. 8 C.F.R. § 204.5(j)(3)(i).

Both Plaintiff's L-1A Petition and I-140 Petition are based on the claim that Plaintiff is employed by New Style in a "managerial capacity." Dkt. 20 at 9. "[M]anagerial capacity" is defined by the INA as "an assignment within an organization in which the employee primarily—

> (i) manages the organization, or a department, subdivision, function, or component of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

organization;
(ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
(iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
(iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

8 U.S.C. § 1101(a)(44)(A). The statute also provides that "[a] first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional." *Id.*

"[T]he INA imposes the burden on the transferee and his or her employer to demonstrate that the transferee's responsibilities are 'primarily' managerial." *Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1069 (9th Cir. 2008); *Noble House, Inc. v. Wiles*, No. 12-CV-7816-PA, 2013 WL 1164093, at *7 (C.D. Cal. Mar. 19, 2013) (citing 8 U.S.C. § 1361). Therefore, that an employee performs managerial tasks does not alone establish eligibility. *Brazil Quality Stones*, 531 F.3d at 1070. Although an organization's "small size, standing alone" cannot support a finding that an employee is acting in a non-managerial capacity, "USCIS may properly consider an organization's small size as one factor in assessing whether its operations are substantial enough to support a manager." *Family Inc. v. U.S. Citizenship and Imm. Servs.*, 469 F.3d 1313, 1315-16 (9th Cir. 2006).

    B.    Application

Plaintiff presents two bases for the claim that the AAO's dismissal of Plaintiff's appeal was arbitrary and capricious. Dkt. 19-1. *First*, Plaintiff argues that USCIS was collaterally estopped from concluding, in the I-140 context, that Zhao did not work primarily in a managerial capacity because it reached a contrary conclusion in the L-1A context. *Id.* at 26-29. *Second*, Plaintiff argues that USCIS should not have analyzed the question whether Zhao previously worked in a managerial position in the United States but, having done so, USCIS's resolution of that question was unwarranted and an abuse of discretion. *Id.* at 10-26.

    1.    <u>Whether USCIS Was Collaterally Estopped by its L-1A Conclusions</u>

As noted, Plaintiff argues that USCIS was collaterally estopped from finding that Zhao's role would not be primarily managerial because it determined, in the context of reaffirming Zhao's L-1A visa, that Zhao worked primarily in a managerial capacity. Dkt. 19-1 at 26-27. Considering this argument would require reviewing the administrative record underlying USCIS's evaluation of the L-1A Petition.

"Generally, judicial review of an agency decision is limited to the administrative record on which the agency based the challenged decision." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010); *see also Lands Council v. Powell*, 379 F.3d 738, 747 (9th Cir. 2004) ("[T]he Supreme Court has expressed a general rule that courts reviewing an agency decision are limited to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

the administrative record." (citing *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985))); *Brazil Quality Stones, Inc. v. Chertoff*, 286 F. App'x 963, 965 (9th Cir. 2008) ("When reviewing an agency decision, 'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.' " (quoting *Ctr. For Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006))).

In this proceeding, because the challenged decision is the AAO's dismissal of Plaintiff's appeal of the denied I-140 Petition, judicial review is limited to a consideration of the CAR, which represents the administrative record underlying that decision. A consideration of Plaintiff's collateral estoppel argument would require looking beyond the CAR to the SCAR, which contains information regarding the review by USCIS of the L-1A Petition. Plaintiff argues that looking beyond the CAR is appropriate for two reasons: (i) USCIS has acted in bad faith; and (ii) the principles underlying collateral estoppel permit it.

        a)        Bad Faith

In support of this argument, Plaintiff contends that judicial review of information outside the immediate record is warranted due to "Defendants' bad faith in speaking out of both sides of their mouths and pretending that the collateral proceeding did not happen." Dkt. 21 at 6-7; Dkt. 19-1 at 27-28. This position is premised on the contention that USCIS concluded that Zhao worked primarily in a managerial capacity for L-1 reaffirmation purposes while reaching the opposite conclusion for I-140 denial purposes. Dkt. 19-1 at 26-27.

"Courts may inquire outside the agency record when plaintiffs make a showing of agency bad faith." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988) (citing *Public Power Council v. Johnson*, 674 F.2d 791, 795 (9th Cir. 1982)); *see Brazil Quality Stones*, 286 F. App'x at 965; *Rueda Vidal v. United States Dep't of Homeland Sec.*, 536 F. Supp. 3d 604, 612 n.4 (C.D. Cal. 2021) ("In challenges to agency actions as arbitrary or capricious, a 'strong showing of bad faith or improper behavior' justifies consideration of extra-record evidence." (quoting *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019))). "For the bad faith exception to apply, 'normally there must be a strong showing of bad faith or improper behavior before the court may inquire into the thought processes of administrative decision makers.' " *Yan v. U.S. Citizenship & Immigration Servs.*, No. 19-CV-05871-SVW, 2020 WL 7978225, at *1 (C.D. Cal. June 4, 2020) (quoting *Animal Def. Council*, 840 F.2d at 1437); *see Liangcai Dai v. United States Citizenship & Immigration Servs.*, No. CV-16-05381-AB, 2017 WL 10574062, at *5 (C.D. Cal. Apr. 7, 2017) (citation omitted) ("The standard for establishing the bad faith exception has been described as 'significant,' 'strong,' 'substantial,' or 'prima facie.' ").

Plaintiff has not made a showing of bad faith sufficient to permit the consideration of materials outside the CAR. Plaintiff has not identified any precedent that supports the position that the agency's different conclusions in reviewing Plaintiff's L-1 and I-140 petitions constitute bad faith *per se*. To the contrary, it is well established that USCIS's review of I-140 and L-1A petitions are separate and independent actions, such that the conclusion as to one petition does not bear, or have a binding effect on the other. See *Noble House*, 2013 WL 1164093, at *7; *Sunlift Int'l, Inc. v. Mayorkas*, No. 20-CV-08869-JCS, 2021 WL 3111627, at *11 (N.D. Cal. July 22, 2021); *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1476 (5th Cir. 1989); *Mahalaxmi Amba Jewelers v. Johnson*, 652 F. App'x 612, 618 (10th Cir. 2016); *Q Data Consulting v. INS*, 293 F. Supp. 2d 25, 29-30 (D.D.C. 2003); *Talent v. Wolf*, 448 F. Supp. 3d 644, 653 (W.D. Tex. 2020).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

This conclusion is supported by the policy and legal rationales that underlie the INA. Another district court has described them as follows:

> As Plaintiffs concede, the requirements for [a Form 1-140 petition and a Rule L-1A visa] are nearly, but not, identical. Further, as a general matter, USCIS is not bound by its previous decisions. *See Seven Star, Inc. v. United States*, 873 F.2d 225, 227 (9th Cir. 1989) ("[A] decision by an administrative agency in one case does not mandate the same result in every similar case in succeeding years."). There is an exception for administrative decisions specifically designated as precedential. 8 C.F.R. § 103.3(c). Here, no party asserts that the prior L-1A visa approvals were precedential; as such, these decisions are not binding with respect to the I-140 petition. *Cf. R.L. Inv. Ltd. Partners v. I.N.S.*, 86 F. Supp. 2d 1014, 1024–25 (D. Haw. 2000), *aff'd*, 273 F.3d 874 (9th Cir. 2001) ("It would be ridiculous to require the INS to grant a petition because it had previously granted a similar petition by mistake. That is precisely why unpublished decisions do not create precedent. The agency recognizes that they may be unimportant for wider purposes or, for that matter, may be questionable."). To "conclude otherwise would impermissibly shift the burden from the petitioner, who bears the burden to establish entitlement to the visa, to USCIS to show that an earlier decision was mistaken." *Healthy & Nat. Trading LLC v. United States Dep't of Homeland Sec.*, No. CV-14-2332-PA, 2014 WL 12564125, at *4 (C.D. Cal. Nov. 12, 2014), *aff'd sub nom.* 691 F. App'x 437 (9th Cir. 2017).
>
> In addition, as the Court previously noted, the L-1A visa and I-140 petitions serve different functions. An approved L-1A petition allows a foreign citizen to work, temporarily, for the same company in the United States in a managerial, executive, or specialized position. In contrast, an approved I-140 petition is part of a three-step process for obtaining an EB-1C visa, which affords lawful permanent residency. Courts have noted this distinction in confirming that USCIS is not bound by its L-1A visa determinations in assessing a subsequent I-140 petition. *See, e.g.*, *Noble House, Inc. v. Wiles*, No. CV-12-7816 PA RZX, 2013 WL 1164093, at *7 (C.D. Cal. Mar. 19, 2013) ("The benefits associated with the granting of an I-140 petition—permanent residence—are sufficiently distinct from the status provided by a L-1A visa—temporary non-immigrant status—that the results of USCIS's analysis of an I-140 petition need not automatically mimic the conclusion USCIS reached when it approved an L-1A visa application[.]").

*Decor Team LLC*, 520 F. Supp. 3d at 1218 (cleaned up).

Taking into account all of the foregoing standards, USCIS does not act in bad faith when it makes a finding on an I-140 petition that is contrary to its finding on an application for an L-1 visa.[4]

        b)        Collateral Estoppel

---

[4] This is not to overlook that many of these cases involved factual settings in which USCIS first made a finding as to an L-1A visa before later making a contrary finding as to a I-140 petition. However, for the reasons that have been presented, the principle that USCIS's determination as to one petition is not binding with respect to the other applies with equal force to this matter, where USCIS allegedly first made its determination to deny Plaintiff's I-140 petition before reaffirming Zhao's L-1A visa on the grounds of her demonstrated managerial capacity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
| Title | New Style Corp v. Chad Wolf, et al. | | |

In its Supplemental Brief, Plaintiff makes the additional argument that, even if the bad-faith exception does not apply to this action, because agency decisions can have preclusive effect, courts must be permitted to look beyond the agency record in certain situations that raise issues as to collateral estoppel. Dkt. 33 at 6-7-8. As Plaintiff contends, "Congress provided that the Agency's immigration adjudications should have preclusive effect. Consequently, it necessarily provided that courts should look outside the administrative record when needed to apply the doctrine. To hold otherwise would frustrate Congress' purpose in providing for issue preclusion." *Id.* at 7.

Plaintiff has not cited any cases that support this novel argument. Further, Plaintiff's argument is foreclosed by well-established case law providing that district courts may only look beyond the challenged agency record to review additional materials in four specific circumstances: when "(1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency." *Fence Creek Cattle Co.*, 602 F.3d at 1131. "These limited exceptions," none of which pertains to collateral estoppel, "operate to identify and plug holes in the administrative record and "are narrowly construed and applied." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). Therefore, Plaintiff's argument, which is based on the assumption that Congress intended to create an intrinsic exception to the rules of agency review in situations of collateral estoppel, is inconsistent with well-settled precedent.

For the foregoing reasons, it is not appropriate to look beyond the CAR in this proceeding. Accordingly, because evidence of USCIS's prior grant of the L-1A Petition is not in the CAR, it is not necessary to reach Plaintiff's argument that USCIS was estopped from denying the I-140 Petition based on its decision-making with respect to the L-1A Petition. Dkt. 19-1 at 28-29.[5]

### 2. Whether the AAO Analysis Constituted an Abuse of Discretion

Plaintiff argues that, even if USCIS was not collaterally estopped by its decision-making in the L-1A context, the AAO's dismissal of Plaintiff's appeal was independently "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Dkt. 19-1 at 9 (quoting 5 U.S.C. § 706(2)(a)). Plaintiff contends that the dismissal was improper because it was premised on "New Style's alleged

---

[5] *Center for Biological Diversity v. Haaland*, 998 F.3d 1061 (9th Cir. June 3, 2021), which Plaintiff filed as supplemental authority (Dkt. 25), does not support a contrary result. That case concerned a decision by the U.S. Fish & Wildlife Service to reverse its prior designation of the Pacific walrus under the Endangered Species Act. *Id.* at 1063. As the Ninth Circuit explained, when an agency makes such a policy reversal, "it must (1) 'display awareness that it is changing position,' (2) show 'the new policy is permissible under the statute,' (3) 'believe' the new policy is better, and (4) provide 'good reasons' for the new policy." *Id.* at 1067 (citing *Org. Vill. Of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015)). Plaintiff argues that this holding "fatally undermines Defendants' argument that the Court should not consider their previous reaffirmation of Zhao's L-1A petition because it is outside of the administrative record of the I-140 petition at issue." Dkt. 25 at 2. *Center for Biological Diversity* is distinguishable. In this case, USCIS is not engaged in policymaking. Instead, it is applying fixed standards in evaluating the I-140 and L-1A petitions of a single person -- Plaintiff. Even if USCIS's evaluation of those petitions constituted policymaking, the alleged inconsistency between USCIS's evaluation of Plaintiff's I-140 Petition and L-1A Petition does not constitute a policy reversal because the petitions, which have distinct requirements and functions, presented distinct issues. *See Decor Team LLC*, 520 F. Supp. 3d at 1218.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

failure to demonstrate that Zhao performed managerial job duties for it in the past," which is not a permissible factor for consideration. Dkt. 19-1 at 9. Plaintiff further argues that AAO's conclusion as to that topic was incorrect. *Id.*

"In reviewing an agency action under the APA, [courts] are limited to reviewing the reasoning articulated by the agency." *Chu Inv., Inc. v. Mukasey*, 256 F. App'x 935, 936 (9th Cir. 2007) (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)). The AAO presented two bases for dismissing Plaintiff's administrative appeal. CAR at 3. *First*, New Style had not adequately demonstrated that Zhao's role at New Style would be managerial. *Id. Second*, Plaintiff's size and organizational structure showed that it could not support Zhao working there in what would be a primarily managerial capacity. *Id.* at 6, 9.

a)  First Basis for AAO Decision

In concluding that Zhao's role at New Style would not be primarily managerial, the AAO reviewed several materials. *First*, the AAO "review[ed] the [Plaintiff's] description of the job duties." CAR at 46. Based on a review of that description, the AAO concluded that "[Plaintiff] submitted duty descriptions for [Zhao] including few credible details and it otherwise provided insufficient supporting documentation to substantiate the qualifying managerial duties she would perform on a daily basis." *Id.* at 6. It found that the "duty descriptions [we]re generic, and could apply to any manager acting in any business or industry." *Id.* Additionally, it found that the provided duty descriptions "d[id] not provide insight into the actual nature of [Zhao's] role." *Id.* Finally, it found that the descriptions "include[d] discrepancies that le[ft] question as to their credibility." *Id.* For example, it noted that "[Plaintiff] regularly refers to [Zhao's] coordination with a board of directors in her duties and elsewhere on the record … [but] there is no evidence on the record to demonstrate that [Plaintiff] has a functioning board of directors since the company is wholly owned by the foreign parent, which is 75% owned by the Beneficiary." *Id.* at 6-7.

*Second*, because the AAO was not satisfied by the description of Zhao's duties, it proceeded to consider Plaintiff's "assert[ion] that [Zhao] ha[d] been acting in a managerial capacity since March 2016" (*id.* at 8) and elected to evaluate the following additional evidence, provided by Plaintiff, about Zhao's previous managerial capacity:

1. "[T]hree policies [Plaintiff] assert[ed] were implemented by [Zhao], including 'Employee Conduct & Disciplinary Action,' 'Expense Management System,' and 'Bonus and Incentive Policies' " (the "Policies");
2. "[M]eeting minutes from three meetings [Plaintiff] assert[ed] took place prior to the date the petition was filed," which were dated "from October and November 2017 and another from February 2018" (the "Meeting Minutes");
3. "[P]erformance reviews [Plaintiff] assert[ed] [Zhao] completed for her claimed subordinate operations, sales, purchasing, and office managers in late 2017" (the "Performance Reviews").

*Id.* at 7-8.

With respect to the policies, the AAO concluded that they "were generic and lacked credible details specific to the Petitioner's business[,] and it appeared that they could apply to any business acting in any industry." *Id.* at 7. Because of their vagueness, the AAO determined that the Policies were not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

"probative in demonstrating that [Zhao] would devote a majority of her time to qualifying managerial duties on a day-to-day basis." *Id.*

With respect to the Meeting Minutes, the AAO concluded that they "reflected few credible specifics regarding [Zhao's] qualifying duties" and, therefore, did not support Plaintiff's assertion that Zhao's role would be primarily managerial. *Id.* at 7-8. The AAO also noted that the first set of minutes did not "reflect that [Zhao] attended" and concluded that the other two sets of minutes had such little detail that they had little probative value. *Id.* at 7. As it explained:

> [Plaintiff] asserts that [Zhao] has been acting in a managerial capacity since March 2016, but it has only submitted vaguely worded meeting minutes that lack credible detail. [Plaintiff] sets forth duties for [Zhao] indicating she was, and would be, primarily tasked with establishing target goals, implementing strategic plans, directing the company's finances, assigning specific work assignments to subordinate managers, conducting training for them, and reviewing and approving important contracts; however, the submitted meeting minutes demonstrate few if any specifics related to these qualifying activities. This evidence is not sufficient to establish that [Zhao] primarily devoted her time to qualifying managerial tasks and that she was consistently delegating duties to a subordinate operations manager and three other department managers.

*Id.* at 8.

With respect to the Performance Reviews, the AAO found that they "lacked credible specifics to sufficiently corroborate [Zhao's] supervisory authority." *Id.* For example, it considered Zhao's review of her subordinate operations manager and concluded that the statements within the review were non-specific and "questionable in light of the lack of other specifics and details included in the performance review, such as actual tasks and initiatives this manager would undertake during the next year or actual metrics they would improve upon." *Id.*

Based on a review of these materials, the AAO concluded that New Style had not adequately demonstrated that Zhao's role at New Style would be managerial. This conclusion was thorough, well-reasoned and based on appropriate materials provided by Plaintiff. Plaintiff's only argument to the contrary is that it was inappropriate for the AAO, after concluding that Plaintiff's descriptions of Zhao's job duties were inadequate, to consider the other documentation of Zhao's past managerial work that Plaintiff had provided. However, Plaintiff cites no case law to support this position. To the contrary, other courts have affirmed agency processes of review that are similar to those employed by the AAO in this matter. *See, e.g.*, *Braz. Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1070 (9th Cir. 2008); *Sunlift Int'l, Inc.*, 2021 WL 3111627, at *10-11.

        b)      Second Basis for Decision

The AAO also reviewed Plaintiff's staffing and organizational structure because it appeared to reflect on Zhao's claimed managerial role. *Id.* at 6, 9.

As part of this analysis, the AAO assessed Plaintiff's "staffing levels . . . as a factor in determining whether an individual is acting in a managerial capacity, [] tak[ing] into account the reasonable needs of the organization, in light of its overall purpose and stage of development." *Id.* at 9 (citing INA §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
| Title | New Style Corp v. Chad Wolf, et al. | | |

101(a)(44)(C)). The AAO explained that "[t]he statutory definition of 'managerial capacity' allows for both 'personnel managers' and 'function' managers," noting that Zhao had been presented as a personnel manager. *Id.* It stated that "[p]ersonnel managers are required to primarily supervise and control the work of other supervisory, professional, or managerial employees." *Id.* Therefore, it concluded that whether Zhao would serve as a personnel manager required a determination that she would be supervising "other supervisory, professional, or managerial employees." *Id.*

To evaluate that question, the AAO assessed an organizational chart provided by Plaintiff that showed that Zhao "directly supervises one subordinate Operation Manager who in turn supervises nine employees." *Id.* The AAO noted that, "[a]s a preliminary matter, [Plaintiff] initially indicated that [Zhao] 'directly' supervised the operation manager who in turn oversaw three subordinate managers. However, [] on appeal, [Plaintiff] emphasize[d] that [Zhao] supervises the operation manager and all three managers." *Id.* AAO "d[id] not find" Plaintiff's explanation for this "discrepancy" "convincing," and concluded that "[Plaintiff's] shifting assertions as to its organizational structure le[ft] uncertainty that it ha[d] not sufficiently clarified on appeal." *Id.* at 10. The AAO also found unconvincing the other evidence that Zhao's subordinates were "supervisory, professional, or managerial employees," noting that the "the duty descriptions for [Zhao's] claimed managerial subordinates" that Plaintiff had submitted "were overly vague and generic and [] d[id] not sufficiently demonstrate that they acted as supervisors." *Id.* at 9-10.

Based on this analysis, the AAO concluded that New Style's staffing and organizational structure did not support a finding that Zhao's role at New Style would be managerial. This evaluation was again thorough, well-reasoned and based on appropriate materials. *See Sunlift Int'l*, 2021 WL 3111627, at *6 (confirming as appropriate the agency's review of "evidence of the nature of [Plaintiff's] business, its staffing levels, and its organizational structure"); *Braz. Quality Stones*, 531 F.3d at 1070 ("[A]n organization's small size, standing alone, cannot support a finding that its employee is not acting in a managerial capacity, but size is nevertheless a relevant 'factor in assessing whether [an organization's] operations are substantial enough to support a manager.' " (quoting *Family, Inc. v. U.S. Citizenship & Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006))).

\*          \*          \*

For the foregoing reasons, AAO's "finding that [Zhao] was not engaged primarily in managerial duties is supported by substantial evidence. The agency's denial of the petition was neither arbitrary or capricious, nor an abuse of discretion." *Family, Inc.*, 469 F.3d at 1316.

### IV.     Conclusion

For the reasons stated in this Order, Plaintiff's motion is **DENIED**. In matters that call for a review of an administrative record, it is customary that the parties file cross-motions for relief. Defendants did not formally file such a motion in this action. However, as part of their Opposition, Defendants requested that, based on a review of the administrative record and the briefing related to the Motion, the Court "enter judgment in favor of the government" (Dkt. 20 at 5) and submitted a proposed judgment to that effect (Dkt. 20-1). Consequently, Plaintiff was on notice of this request, and had the opportunity to address it in the Reply and at the hearing. Therefore, it is unnecessary to have Defendants go through the formality of filing a motion for relief at this time, with the parties to restate the positions already

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-02581 JAK (JEMx) | Date | March 11, 2024 |
|---|---|---|---|
| Title | New Style Corp v. Chad Wolf, et al. | | |

presented. Therefore, because Defendants have, in effect, presented a cross-motion for summary judgment, that motion is **GRANTED.**

Within 14 days of the issuance of this Order, Defendants shall lodge a proposed judgment and state in the notice whether Plaintiff has agreed to its form. If the parties have not agreed to the form of the judgment, within seven days after the proposed judgment is lodged by Defendants, Plaintiff shall file any objection(s) in accordance with the Local Rules.

**IT IS SO ORDERED.**

                                                        :

Initials of Preparer      TJ